[Civ. No. 7018. First Appellate District, Division One.—July 28, 1930.]

IVAN G. SAWDEY et al., Respondents, v. PRODUCERS' MILK COMPANY et al., Defendants; R. W. RASMUSSEN COMPANY (a Corporation) et al., Appellants.

468

Hadsell, Sweet & Ingalls, Cooley & Crowley and Cooley, Crowley & Gallagher for Appellants.

Ford & Johnson for Respondents.

PARKER, J., *pro tem.*—This is an action for damages arising out of an automobile accident. As a result of the accident Mildred E. Sawdey lost her life. She was the wife of Ivan G. Sawdey and the mother of Ivan G. Sawdey, Jr., the plaintiffs.

Each of the defendants appear by separate counsel and each conducted a separate defense. Judgment, pursuant to

the verdict of a jury, was in favor of plaintiffs and against both defendants. Each defendant prosecutes a separate appeal, based upon the same transcript.

Neither appellant complains of any error in the conduct of the trial; nor is error predicated upon the giving or refusal of instructions to the jury. In the main, the contentions of each appellant are similar in point and extent.

Therefore, we may first outline the case sufficiently to discuss and apply the law governing. Ivan G. Sawdey, accompanied by his wife, the decedent, his coplaintiff Ivan G. Sawdey, Jr., and an infant of the age of some few months, were traveling on a highway leading from Hayward to Oakland. The time was between 12 o'clock midnight and 1 A. M. and the season was of November in the year 1928. On the same highway and at a time preceding the hours referred to as the time of the Sawdey appearance the defendant Rasmussen Company was operating a milk truck and trailer loaded with milk and supplied and under the management and control of one Parker, the driver.

This truck had come from Modesto and was en route to Oakland. At some place before reaching the point where he finally stopped Parker had been having more or less trouble with the truck. The engine would falter and sputter and gave to him unmistakable signs that the gas supply was either exhausted or shut off from the engine. In any event, the truck at last refused to go any farther and stopped in its tracks. Parker then proceeded to examine into the causes and quickly found that the gas supply had become exhausted. Just at this time he noticed a street-car passing in the direction of Oakland and without much or any heed to the truck Parker immediately ran for the car, stopped it, boarded it, and proceeded to Oakland. The truck was left standing on the extreme right of the paved portion of the highway, close to the edge. The evidence amply sustains the allegation that the tail-light on the trailer had gone out either through disconnection or some other cause. The truck was left with the headlights burning, but no light of any kind from the rear.

Plaintiff Sawdey, Sr., coming over the same route traversed by the now stalled truck, failing to notice the obstacle in his path, collided with the trailer attached to the truck. The impact, though not of great force, was sufficient

to stop the Sawdey car, fastened under the platform of the trailer. Immediately Sawdey alighted from his auto, his coplaintiff, a boy of about six years of age, getting out with him. Sawdey gave attention to his wife and to the infant in her arms. Others came to his assistance and the general confusion attendant upon a highway accident followed. While this was proceeding and each one present trying in his own way to either do something helpful or else get aid, a large truck was noticed coming toward the two cars heretofore mentioned. This truck was the truck and trailer of the defendant Standard Creameries driven by the defendant Stoffel. The Standard Creameries truck and trailer was loaded and traveling at a great speed. Unable to stop after seeing the confusion ahead, the result was that this last truck and trailer crashed into the other two. When the crash was over the infant was found dead in the Sawdey car and Mildred Sawdey was picked up some distance away, seriously injured, from which injuries she died.

This sketches the facts sufficient for the present. As the points urged are discussed more detail will follow.

We will proceed with the appeal of Rasmussen Company, owners of the truck driven by Parker and parked without a tail-light on the highway.

This appellant relies for a reversal of the judgment upon two main grounds. First, that Sawdey was guilty of contributory negligence as a matter of law; second, because the negligence, if any, of Parker was not the proximate cause of the death of Mildred Sawdey. ██ Preliminary to the argument on these claims, this appellant also urges that, though conceding the absence of any tail-light on its truck, negligence does not necessarily follow. It is urged that if one has used ordinary care in all respects to ascertain the condition of that light and finds it operating satisfactorily he need not keep a watchman over the rear to insure that in no event shall this warning light fail. This contention seems to be supported by some authority and particularly would it be true in the case of an auto being driven. But when and where one abandons a truck on the highway without care or thought concerning the warning light the authority cited has no application. It would be the exercise of the most ordinary care to ascertain what, if any,

warning lights were provided to give notice to those traveling the highway, and if it should be disclosed that no lights were operating from the rear, then, before the driver would, in the exercise of ordinary care, be justified in leaving the truck, it would be his duty to provide some sort of an appropriate light or other signal plainly indicating the presence of the truck standing on the highway. The absence of a warning light on the rear of the trailer, coupled with the driver's complete failure and neglect to ascertain what the condition was, suffices to establish plaintiffs' claim of negligence on the part of the appellant Rasmussen Company.

Coming, then, to the main points urged: This appellant predicates his charge of contributory negligence on the part of Sawdey on three separate specifications of negligence. It is urged that Sawdey was negligent because he did not travel at such a rate of speed that he could stop within the radius illuminated by his lights. On the authority of *Ham* v. *County of Los Angeles,* 46 Cal. App. 158 [189 Pac. 462, 466], we are asked to declare specifically that it is negligence as a matter of law for one to drive or operate a motor vehicle at night at any speed greater than that which will permit the vehicle to be brought to a full stop within the radius illuminated by the lights. In the cited case it is said: ''But we are not prepared to say that negligence may not be predicated, as a matter of law, irrespective of any positive law as to speed limits, where an automobile is being driven in the night on any part of the highway, and where the driver is dependent upon the lights of his machine for knowledge of the condition of the road and the traffic upon it, and runs into an obstruction, if he drives at a rate of speed which will not permit him to stop or slow up within the radius illuminated by his lights and the accident is proximately caused thereby.''

The court then cites the case of *Lauson* v. *Fond Du Lac,* 141 Wis. 57 [135 Am. St. Rep. 30, 25 L. R. A. (N. S.) 40, 123 N. W. 629], where the Supreme Court of Wisconsin held flatly that it was negligence on the part of a driver to drive his car at a rate of speed such as would prevent the car from being stopped within the radius of illumination. It may be further conceded that many of the Middle Western states follow the Wisconsin rule, and it may be

further conceded that there is much of persuasive reasoning to support the authorities. However, we decline to accept the rule in all its fullness, for many reasons. It would be a more applicable rule if confined to obstructions or defects arising from the highway bed rather than from something placed or negligently left thereon.

It is a serious thing for courts to endeavor to establish arbitrary rules of safety, thereby assuming, to a large extent, the functions of the law-making branch of government. The question of public safety is always relative to existing conditions. There are certain hazards that must remain as a part of the daily routine and while the minimizing of these hazards is a goal to be earnestly sought, yet the elimination of hazard should be scientifically approached and with care lest in avoiding the hazard means of transportation be not rendered useless. To establish an arbitrary rule, such as here contended for, might and would give to traffic obstacles and dangers far greater than might be reasonably anticipated. For instance, it would bring all traffic down to the speed of the car that would be obliged to travel at the slowest speed in order to obey the rule. It would be an incentive for all cars to equip with powerful lights to the end that the radius of illumination might be enlarged or lengthened so as to permit high speed, which excessive lighting would be worse than total darkness as far as safety of traffic would be involved. It would serve as a defense and as an excuse for all manner of traffic obstruction, and would disturb and upset all prevailing traffic safeguards by making the stop test the determining factor in night driving.

Our state is spending millions of dollars in highway construction and in road maintenance, coupled with an adequate and efficient highway patrol. Few accidents result from defective highways and when a road or highway is rendered unsafe or hazardous it is the rule and custom that such dangers are sufficiently guarded or marked as to insure little likelihood of injury to the traveling public. Further, the law requires that any obstacle left in the road at night or after dark have displayed warning lights sufficient to be seen at a distance far greater than the radius of any practicable headlight. With these safeguards already provided it seems so unnecessary to further undertake to re-

move all hazards, at the risk of increasing them. Further, and in itself determinative of this one phase of the appeal, is the record itself. The evidence discloses that the lights of the plaintiff's car shed light for a distance of more than fifty feet or at least that distance, approximately, in front of his car, that he was traveling at a speed of twenty-five miles per hour and that the car was so equipped that it could be stopped within fifteen feet. There is no evidence of any kind contradictory to this. Therefore, if the argument ended at this point there would be nothing to which the rule could apply, should such a rule be declared.

As a second specification of negligence on the part of Sawdey this appellant argues that Sawdey did not look and see objects which were admittedly visible. This argument comes clearly within the domain of disputed fact. Conceding that the plaintiff testifies that his lights illuminated the highway some fifty feet ahead of the car and that he did not see the standing truck and trailer until too late to avoid the collision, the conclusion of appellant does not follow as a matter of law. Many things are to be considered before it is to be declared as a principle of law that men are conclusively presumed to be able to see certain objects at given distances and under varying conditions. It is admitted that the night was clear as far as fog or storm might be considered. But there is evidence indicating that the truck was on the edge of a seventeen-foot highway and the plaintiff in driving was some four or five feet in. It is a matter of every-day knowledge that light directed within a certain area serves to deepen the darkness without the lighted portion. Further, that the body of the trailer, behind and attached to the truck, was an object of some height. Likewise is it a matter of common knowledge that the design of modern automobile lighting is to direct the ray downward rather than upward, for the obvious reason that light directed upward would strike directly in the face of oncoming traffic and blind the sight of an approaching driver.

The jury might well have concluded, with these points in mind, that the standing truck and trailer were not within the range of vision of the plaintiff. And this conclusion would be supported by the plaintiff's own testimony that he saw neither of the objects named.

We decline to hold that, as a matter of law, it is negligence *per se* to fail to observe an unlighted object of the character here involved, under the conditions shown to have existed in the instant case. ▮ Lastly, it is contended that the lights of the plaintiff's car were defective and not of the capacity or power required by the California Vehicle Act as it read at the time of the accident. Supporting this contention appellant cites section 99 of the said act, as follows:

"Every vehicle when upon any public highway within this state during the period from a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible a person, vehicle or other substantial object on the highway at a distance of two hundred feet ahead, shall be equipped with lighted lamps and lighted headlights as herein respectively provided for different classes of vehicles and subject to such exceptions as are set forth in this act." [Stats. 1923, p. 546.]

From this the appellant argues that it is intended to be and is the law that drivers should only operate vehicles under such conditions that persons and obstructions on the road ahead of them would be visible for a distance of two hundred feet. We cannot adopt this construction. As indicated in the provision itself it is not the purpose thereof to regulate the quantity or quality of the lights required. That is left to other sections of the act itself. The quoted provision is intended merely to indicate the conditions under which lighting is required. It must be borne in mind that the purpose of lights is twofold, namely, to enable one to see and to be seen. And in this section the intent of the legislature is manifest. When darkness is of a density to obscure an object two hundred feet distant it provides that there must be lights. Obviously, to overcome the darkness existing to the extent of disclosing the presence of the car, which otherwise would not be clearly discernible.

The reasonableness of this construction is apparent from a reading of the section immediately following, numbered section 100. [Stats. 1927, p. 1432.] This section specifies the kind and strength of the lights required and is all-embracing. Positively, it prohibits glaring lights and in its amendment of 1929 [Stats. 1929, p. 531], not in force at the time of the accident, but illustrative of the engineering

experience of automotive engineers and lighting experts, declares that when any of the main bright portion of the headlamp beams rises above a horizontal plane passing through the lamp centers parallel to the level road or in any case higher than forty-two inches seventy-five feet ahead of the vehicle, the said vehicle is improperly lighted. While as indicated, this amendment was not in force at the time of the accident, we are here dealing with a question of construction only and the fact that the legislature added this amendment to section 100 and left section 99 as it stood before serves to support our views as to the legislative intent in the said section 99.

The foregoing disposes of the first ground of this appellant's argument. It will be noted that the entire contention is around the question of sufficient lighting. The evidence discloses without contradiction that the lights of the Sawdey car were in proper and legal working condition, having been, from time to time, tested and approved, so that the jury were entitled to conclude that the lights, in all respects, complied with the then legal requirements. Further, statistics seem to show that California is among the ranking states of the Union in per capita ownership of automobiles. From which it might be said that the questions of night driving and light and lighting capacity and effect are matters well within the common knowledge of the average person. Using their best individual judgment, coupled with the every-day experience of perhaps a majority of their number, the jury doubtless were competent to determine as a pure question of fact the degree of care employed by plaintiff. It would, to repeat, be a dangerous experiment for a reviewing court to hold at naught the finding of a jury in such a case and attempt to set up some arbitrary and false standard of care, the foundation of which would change and shift in the presence of each varying state of fact.

The second main ground upon which this appellant seeks a reversal of the judgment is that the negligence of Rasmussen Company was not the proximate cause of the death of Mildred Sawdey. Inasmuch as appellant Standard Creameries Company seeks to avoid the judgment on the ground that it was the negligence of the Rasmussen Company that was the proximate cause and the sole cause of

the accident, we will pass this question for the time and discuss the contentions of both appellants hereinafter.

Thus we pass to the appeal of Standard Creameries. This appellant relies upon much the same grounds as urged by its co-defendant, although somewhat differently stated and argued from other standpoints. This appellant likewise urges that Sawdey was negligent as a matter of law and that this negligence contributed proximately to the accident. Much of the argument is on the question of lights and the ability of Sawdey to stop his car. All that we have said in discussing the Rasmussen appeal has equal application here. Further, we cannot see the great importance of plaintiff's ability or inability to stop within a certain distance. For, as was said in *Kendrick* v. *Kansas City*, (Mo.) 237 S. W. 1011, if plaintiff had seen the truck and trailer there would have been no need for him to stop, as he could have passed it on the highway. Much of this appellant's argument is based upon the fact that others from various viewpoints were able to see the Rasmussen truck and trailer at much greater distances, even as far as two hundred feet away. This argument has no force. It is well known that one looking into the darkness from an area of light has a more limited scope of vision than one looking directly through the darkness or dusk. And again it may be noted that the modern idea of sufficient automobile lighting scientifically adjusted is a light whose main force is spent upon the highway rather than, as was the case here, upon an object higher than the headlights themselves.

This appellant next argues that under the record no showing has been made that would make it chargeable with any negligence. It places itself under the same rules of law as serve to shelter the plaintiff. It urges that if Sawdey was not chargeable with negligence in not seeing the unlighted trailer then this appellant must likewise be absolved.

Under the facts, however, this claim cannot be sustained. When Sawdey came along there was nothing on the road but the truck and trailer without tail-light or other warning. When the Standard Creameries truck and trailer came along the scene was much different. There was the tail-light of the Sawdey car exposed. This appellant claims that the Sawdey tail-light was showing in a direction oppo-

site to his course by reason of the fact that the car was at right angles with the first truck. The record does not support this, though there is some testimony to that effect. What evidence the jury must have accepted was to the effect stated, namely, that the Sawdey tail-light was plainly visible in the direction from which the Standard Creameries truck came. Further, there were a number of people around the scene of the two cars that had collided and by all manner of means, and shouting, trying to stop the driver of the last truck. There was an evident scene of an accident in that there were two lighted cars parked alongside of the highway the lights of which were shining straight ahead and out of the course of the coming truck. This oncoming truck was traveling at a high rate of speed variously estimated from thirty to forty miles per hour. Heedless of all of the warning, this driver proceeded on and smashed into the two cars. The truck and trailer of the Rasmussen Company weighed, with the load, approximately twenty-eight tons, and it is probable, or at least as probable as the contrary, that the brakes thereon were set. The smaller car had its brakes set and both headlights burning. The speed of the oncoming truck can be estimated, or at least inferred, when the record discloses that the force of the impact sent the two cars struck down the road some considerable distance. Surely the jury were justified in concluding that the driver of the Standard Creameries was not using ordinary care under the circumstances. Finally, both appellants meet upon a common ground, though not as friends.

Each, this time, concedes its negligence, limited, however, to the purposes of this particular argument, and with the same limitation concedes the care of the plaintiff. But each appellant, in turn, charges its co-defendant with the entire damage.

Rasmussen Company asserts that the first collision was a mere incident, slight in its consequences, and that if the casualties had ended there the gross result would have been a bent fender and a broken headlight.

The Creameries Company urges that when its truck came along Mrs. Mildred Sawdey was already dead and that whatever may have been the force of the last impact it could have done no harm to her. We are not prone

to again detail the case or to exhaustively detail every scrap of evidence.

The evidence discloses that after the first impact the decedent Mildred Sawdey made outcry calling for her baby and bemoaning the injuries to the child. That there was no evidence of facial injury and that she was endeavoring to crawl or get over the front seat. Plaintiff attempted to lift her, but her weight was too much and as he saw help approaching he dropped her in the rear of the car and awaited aid. Before aid reached the stricken wife the second impact occurred. By this impact she was thrown clear of the car and was found lying in the road, suffering deep facial lacerations and a fracture of the head bones, together with other injuries, from which she died. The injuries to the head would have been sufficient, in the opinion of uncontradicted testimony of the attending physician, to have caused death.

Appellant Creameries presents the ever-plausible argument of so-called incontrovertible physical facts in that all of the injuries shown were all frontal injuries and could not be produced by a force behind. The weakness of the argument is that the physical facts do not present the entire picture; and the premise is unfounded; and the conclusion is unsound. Thus hampered, the argument loses its strength. Illustrating, the testimony indicates that at the time of the impact the decedent was over the front seat facing the rear and would have received the force of the second impact directly in front of her body. Next, the force of the fall from the car could have caused the injuries found. And lastly, the injuries of the head, so plainly seen after the last impact, were not apparent after the first. From all of these facts it is concluded and held that the jury rightly held at fault the Creameries Company. ██ The main argument of the Rasmussen Company is to the effect that the effect of its negligence had exhausted itself before the second impact. That the coming along of the Creameries truck was a thing not to be anticipated and introduced a completely new element into the case, for which the Rasmussen Company cannot be held liable in any degree.

As we view the facts the decedent, solely through the negligence of Rasmussen Company and without fault on her part, was placed in a position of great danger, from which

she was not able to rescue herself. That the dangers of her position were obviously dangers that might be expected to happen to any person in a similar position, namely, danger of traffic in a place devoted exclusively to traffic. There was ample evidence to the end that the first impact so shocked or stunned her as to prevent her escape unaided. And the further evidence discloses that the second impact was within a period of less than five minutes, approximately three minutes. Further, the car of Sawdey was fastened to the trailer of Rasmussen Company and could not be moved. Under these conditions we think that authorities are in accord in holding both defendants liable for the death of Mildred Sawdey and the damages ensuing therefrom.

It is well-established law that the original wrongful act may be so continuous that the action of a third person precipitating the disaster will, in law, be regarded as not independent, but as joining with the original act to produce the accident. (*Rauch* v. *Southern California Gas Co.,* 96 Cal. App. 250 [273 Pac. 1111]; *Merrill* v. *Los Angeles Gas etc. Co.,* 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534]; *Carroll* v. *Central Counties Gas Co.,* 74 Cal. App. 303 [240 Pac. 53].)

The mere fact that one of several concurring causes may not have been reasonably anticipated is not enough to shield from liability him who sets in motion the other; for it is well settled that the negligence complained of need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause; that is, one that was so efficient in causation that, but for it, the injury would not have occurred. (*Sandell* v. *State,* 115 S. C. 168 [13 A. L. R. 1268, 104 S. E. 567, 569]; *Knight* v. *Wessler,* 67 Utah, 354 [248 Pac. 132].)

It has been held and is the law of this state that where an injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are proximate causes and recovery may be had against either or both of the responsible persons. (*DeWees* v. *Kuntz,* (Cal. App.) [280 Pac. 552].)

The case has been excellently briefed and we have noted the various authorities cited by appellants and find nothing therein to change our conclusions. In all of these cases

the rules announced were dependent upon their own peculiar set of circumstances and intended only as authority for cases which could be reasonably parallel in fact. The practice of making excerpts from decisions often serves but to misrepresent the court quoted and mislead the court to which the citation is directed. Such has been recently said by one of the reviewing courts and is indeed too true.

In this case we must assume that industrious and able counsel presented to the trial court every phase of the law contended for and requested instructions thereon be given the jury. No complaint is made of any instruction refused nor is complaint made that the instructions were in anywise conflicting. Nor is complaint made of any instruction given or any ruling of the trial court.

We consider the verdict and the judgment entered thereon to be just and as to all defendants it is affirmed.

Tyler P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 27, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 25, 1930.