[Civ. No. 7889. Second Appellate District, Division Two.—June 30, 1933.]

JOSEPH E. MERRILL et al., Respondents, v. E. BRUCE FINIGAN et al., Appellants.

Joe Crider, Jr., and Elber H. Tilson for Appellants.

Mulholland & Denny for Respondents.

PARKER, J., *pro tem.*—This is an appeal from a judgment in favor of the plaintiffs in the sum of $4,892.70, against the defendant B. & H. Transportation Company and from an order denying defendants' motion for a new trial. The appellants' brief in reality is a duplicate of the reporter's transcript, the object being apparently to secure here what the court below denied, a trial *de novo*. This hardly fits into the scheme of appellate practice. However, we will discuss the case as it is presented.

The controversy arises out of an automobile accident in which three different automobiles are involved and it happened in the intersection of two streets in Long Beach. Redondo Avenue runs in a general northerly and southerly direction. Redondo Avenue does not intersect Second Street in the sense that is generally understood when we speak of intersecting streets. The situation is that Redondo Avenue meets Second and stops; yet there is an area that might be classed as an intersection for our purposes.

Plaintiff Joseph E. Merrill was driving a Star automobile on a January night or evening, after dark. His lights were lit and he was driving at a speed of some ten miles per hour hugging the northerly curb of Second Street and driving in

a westerly direction. Defendant Finigan was driving a Star automobile along Second Street on the southerly side thereof and in an easterly direction. His lights were lit. Plaintiffs and defendant Finigan were both in the area which may be designated as the intersection. The defendant and appellant B. & H. Transportation Company owns and operates a line of busses in the city of Long Beach and particularly a bus which on the night in question was being operated by one Slaughter. When the cars noted were in the intersection, each in the act of crossing, appellant's bus came along and entered the intersection at a speed of from eighteen to twenty miles per hour. The area compromising the so-called intersection was forty-five feet square. The bus was twenty-eight feet long. This bus came thus into the intersection area and attempted a right turn. In accomplishing this the bus went past the center of Second Street and practically monopolized the street. It obscured all view of plaintiffs' automobile and put defendant Finigan strictly on the defensive for his own safety. Finigan, in trying to negotiate the crossing, was forced north across the center line and the bus between him and plaintiffs' car. The bus missed plaintiffs' car by approximately a foot and Finigan, maneuvering along behind the bus crashed into the car of plaintiffs, causing the damage forming the basis of the recovery, injuring the car of plaintiffs and the passenger therein. The view of Slaughter, the driver of the bus, during the last one hundred feet of his approach to the intersection was obstructed by a building on the property at the southeast corner and palm trees in the parking abutting said property on the north and west so that Slaughter did not have a clear and uninterrupted view of the traffic east on Second Street for a distance of two hundred feet east of said intersection.

The court specifically found Slaughter to have violated the provisions of subdivision B–2, section 113, Act 5128, General Laws, by entering the intersection at a speed in excess of fifteen miles per hour under the conditions stated. There is one significant bit of evidence that may be noted. Slaughter, the driver, testified as a witness on behalf of defendants and appellants. His testimony was to the effect that he entered the intersection at about eight or ten miles per hour. The interesting part, however, is his statement that the bus could not be driven around the corner at a

greater speed than eight or ten miles per hour. The reason is not on account of the mechanical construction or the speed capacity of the car but because at a greater speed the bus would sway and veer to an extent that would shift the passengers from one side to the other. The inference is obvious from the testimony that if the bus was operated at a speed in excess of fifteen miles per hour it would sway all over the intersecting area, which seems to be exactly what it did on the night in question. The witness was carefully questioned and made cautious answers in this connection inasmuch as there is no testimony on his part that the bus did not sway and careen through the turn.

We are content to accept the finding of the court as the evidence amply supports the same. ▮ Appellant, however, argues further that conceding the negligence of Slaughter the negligent operation of the bus was not the proximate cause of plaintiffs' injuries; that the collision between the two Star cars was something entirely independent of the operation of the bus. Surely there can be little expected from this contention. We have the two smaller cars, each rolling peacefully along and each on its own side of the highway at a point where the only lights afforded were those of the cars, not a chance for an accident nor an iota of hazard and into this peaceful scene comes hurling itself a twenty-eight foot bus at a speed of twenty miles per hour, careening and twisting as a giant monster. Immediate confusion results and all is chaos. And this chaos and the results must be chargeable to the one and only cause thereof, namely, the bus. The old squib case announced the doctrine centuries ago that one who negligently sets in motion a series of events stands as sponsor of the result and liable therefor. (See, also, *Sawdey* v. *Producers Milk Co.,* 107 Cal. App. 467 [290 Pac. 684], and cases therein cited; *Craig* v. *Boyes,* 123 Cal. App. 594 [11 Pac. (2d) 673], and *Herron* v. *Smith Bros.,* 116 Cal. App. 518 [2 Pac. (2d) 1012].)

▮ We may take occasion to note that the record before us is not complete. It appears from the transcript that many witnesses illustrated their testimony by maps and diagrams which are not before us. The statement of a witness that the car of plaintiff was here (indicating), the bus came along in this course marked by a dotted line, means abso-

lutely nothing in the absence of the diagram. If a diagram is necessary in the court below it is more necessary for a complete review of the evidence. Often the position of automobiles after an accident may be a contributory factor in influencing and directing the trial court's finding. All we can do on review is guess, and with the presumption in favor of the judgment, the guess must follow the presumption.

Appellants' next point concerns the amount of damages. The award of the court is as follows: To plaintiff Tennis Irene Merrill on account of her injuries, $3,500; to plaintiff Joseph E. Merrill on account of loss of services of his wife and expenses for her care, $1334.20; for damages to auto, $58.50. The last amount was pursuant to stipulation.

We find no specification that the damages were excessive. Appellant subheads this branch of the case thus: "The injuries sustained by Mrs. Merrill were not serious" and then quotes the testimony of Mrs. Merrill and the doctors. We do not find any complaint as to the amount awarded the husband. While the point as to Mrs. Merrill is rather equivocally urged, we may consider it as being sufficiently presented. The sum awarded does not at first blush or at all suggest passion or prejudice. The lady did sustain injuries which caused her much pain and suffering and which have weakened and disabled her from her usual avocation. At the time of the accident she was pregnant and in April of the same year she was delivered of a normal, healthy child. After the delivery it was found necessary to operate on the patient by reason of a diseased condition discovered to exist in the organs going to constitute the regenerative processes. The testimony supports the conclusion that this diseased condition was directly traceable to the injuries received in the accident. Also there is testimony to the effect that the injuries received in the accident directly contributed toward creating a condition that will prevent Mrs. Merrill from further conception. These facts, combined with the undisputed fact of pain and suffering endured, show sufficient to uphold the judgment. Appellant criticises the conclusions of the medical experts and argues that the situation is one that can be determined as a matter of common knowledge without expert testimony. We decline to claim such a knowledge of the subject as would justify our launching

106

off into any lay discussion. The field of medicine and surgery is highly specialized and beyond our ken. Should we assume a wisdom of curb acquirement we would prefer to remain among the subjects less liable to debate, such as dandruff and psychiatry.

Judgment affirmed.

Craig, Acting P. J., and Stephens, J., concurred.