[Civ. No. 4966. Third Appellate District.—October 6, 1934.]

ANDREW SMARDA et al., Respondents, v. FRUIT GROWERS' SUPPLY COMPANY (a Corporation) et al., Defendants; CLARK A. MORSE et al., Appellants.

M. J. Cheatham and Carr & Kennedy for Appellants.

J. Oscar Goldstein for Respondents.

THE COURT.—This appeal, from a judgment upon a verdict of the jury in favor of plaintiffs for injuries sustained in an automobile accident, was heretofore considered by this court and the judgment therein reversed. The matter is now before us upon rehearing.

Briefly the facts are that about 5:45 o'clock on the evening of December 21, 1931, respondents, seated in the front seat of their automobile were proceeding southerly on the Pacific highway near the town of Corning. It was raining hard. At some point near the "city limits" sign of the north boundary of Corning a large car with glaring headlights approached from the opposite direction and so blinded Andrew Smarda, who was driving, and also his wife Anna Smarda, that for an interval of time their vision was so obscured they could see nothing in front of them. About this time respondent reduced the speed of his car to approximately 20 miles an hour and continued this speed until a truck that was standing upon the highway suddenly loomed before them with which they collided, demolishing the car and causing severe injuries to Mrs. Smarda.

At the point of collision for some distance in both directions the highway is 20 feet wide, straight and level. The truck in question, owned by Clark A. Morse and operated by Van M. Morse, was also proceeding southerly along the Pacific highway and had reached a point about 275 feet south of the northerly city limits sign when one of the gas reservoirs became empty. The truck was stopped on the highway with the left side thereof about 10 inches to the right of the center of the highway. The driver alighted and had turned on a reserve reservoir and had returned to his cab when the accident took place. Whether or not the lights on the truck were burning at the moment of impact was in dispute. Plaintiffs claim the lights were not burning until after the collision when they flashed on, while the driver testified the lights, including the tail lights and clearance lights were burning all the time. In view of the finding of the jury we must assume that the truck was not lit at the moment of collision.

■ Prior to the trial the deposition of Andrew Smarda was taken, which differed in several material respects from the testimony given by him at the trial. The conclusions reached by us in our former opinion were based in a large measure upon the testimony given in the deposition, but we have come to the conclusion that testimony given upon the trial of the case is controlling on appeal and any discrepancy was for the jury to pass upon and for them to say where the truth lay. A similar situation arose in the case of *Miller* v. *Schimming*, 129 Cal. App. 171 [18 Pac. (2d) 357], where the court after reciting the inconsistent and contradictory statements of plaintiff given in his deposition and at the trial said:

"From the above recital it is apparent that not only was plaintiff's testimony during the trial contradicted by his previous testimony given during the taking of his deposition, but also that his testimony on direct examination as to the location of his truck when he looked both to the east and west, and more particularly the distance to the west within which his vision was unobstructed, was contradicted by his later testimony on cross-examination. Nevertheless, we are not prepared to say that his testimony, although clearly contradictory in the respects mentioned and conflicting in other respects, is entirely discredited and unworthy of consideration. It is not conclusive of this appeal that the record indicates that plaintiff's testimony during the trial was, in many respects, conflicting and that it was contradicted by his testimony given on another occasion. The question of the credibility of witnesses is one that is to be determined solely by the triers of fact. (*Farmers' Bank of Camarillo* v. *Goodrich*, 90 Cal. App. 717 [266 Pac. 550]; *Winning* v. *Board of Dental Examiners*, 114 Cal. App. 658, 667 [300 Pac. 866].) The jury, by its verdict herein, has indicated that it did not consider plaintiff's testimony, inconsistent and conflicting though it undoubtedly was, as being entirely unworthy of belief. By this determination we are bound unless it appears that plaintiff's testimony is inherently so improbable and impossible of belief that, in effect, it constitutes no evidence at all. (*DeArellanes* v. *DeArellanes*, 151 Cal. 443 [90 Pac. 1059]; *Crow* v. *Crow*, 168 Cal. 607, 610 [143 Pac. 689].)"

The issue before this court is whether, under the facts adduced at the trial, Andrew Smarda was guilty of contributory negligence as a matter of law. ■ There is no question that if Andrew Smarda, the husband, was guilty of contributory negligence, such negligence is imputable to the wife. (*Basler* v. *Sacramento Gas & Electric Co.*, 158 Cal. 514 [111 Pac. 530, Ann. Cas. 1912A, 642]; *Solko* v. *Jones*, 117 Cal. App. 372 [3 Pac (2d) 1028].)

■ Smarda, testifying in regard to the accident, said: "I started south and traveled at a rate of thirty miles because it wasn't safe and I am not a fast driver, down south on the highway and as I been nearing Corning, I mean I come to that bridge there, that concrete bridge,— I was nearing here to the concrete bridge then I slow down.— I been coming to this bridge. I slow down for this bridge.—I slow down because a heavy rain been setting in and I keep on slowing down and I seen that here, that second stop sign for the city limits. I kept on slowing down, went at the rate of twenty, not over twenty-five miles and as I passed this city limits .kept on going slow with my foot on the brakes all the time, because I been slowing down. A heavy car from the opposite direction been coming with powerful headlights, blinded my eyes, so I couldn't see no left hand side but I could see the telephone and power line poles and I could have a clear vision of the right hand side of the road. I had a clear vision on the right hand side, I couldn't see no left side, but I could see to the right hand side. Heavy sheets of rain came and it wasn't just like a few seconds, we just traveled at the rate of about twenty miles an hour and then as soon as that car went like a flash pretty fast and I just approximately—I seen the pole—I seen this pole, and I see plain the right hand highway, I seen very plain, I could see to the right but I couldn't see to the left. I seen very plain.

"Q. Now, Mr. Smarda, after this car passed you, as you say here somewhere, some place, what happened? What did you see? A. Well, I just been blinded, as I say to the left, but I could see clear to the right, because I seen that city limits and seen that pole and as soon as it been just like a flash that car passed and the truck loomed right in front of us and all I could do, I could hear another car come

from the opposite direction and see the lights shine from the opposite direction here, I couldn't turn to the left, I couldn't turn to the right, all I could do, with all my power jam my brakes on the car, shoot forward and bump into the truck and the truck hit just that quick (witness indicates by snapping his fingers), for two seconds I didn't have the chance to go either way. I tried to stop with all my power my car. Q. When you first saw that truck loom up, were there any lights on that truck? A. No. My wife said there no lights and all I could say was to jump on the brake with all my force, with all my power. Q. How soon before you hit that truck did your wife say—what did she say? A. She said, 'Truck, no lights,' and I seen it myself but I couldn't say a word. You couldn't get a word out of me. I got my foot on the brake, but with all my might I got hold of the emergency and pulled it back and still tried to stop my car. I got four wheel brakes. The brakes locked or something and the car just shot forward, skidded on the wet pavement and as she skidded on the wet pavement with all the force she had into that truck, the truck being at a standstill, the truck kind of forced the car a little back. Q. What happened after your machine struck the truck with regard to anything that happened to the lights of the truck? A. As soon as we hit it and the car came back, the lights flashed on. You could see the side lights. Afterward they snapped on the side lights, but we never seen that tail-light light. Q. Did you see the side lights go on? A. Yes, we seen it and my wife seen it snap on. . . . Q. Now, then, when you got across the bridge here you slowed down the first time? A. Yes. Q. Then you slowed down here for this sign? A. Yes, sir. Q. Now you say you slowed down again when these headlights passed you? A. Yes. Q. And blinded you. How far away or how long a distance existed between the time that this automobile passed you between these two poles and when you saw that truck for the first time? A. I couldn't say. It been dark in the night and heavy rain, the truck loomed right in front of me just in a second, that car passed and I been right in front of the truck. Q. But up to the time the car passed you could you see anything at all? Did you see any red lights of any kind? A. No, I did not.

Q. Were you able to see ahead? A. Yes, I could see the poles, those power line poles, and the city limit sign, I could see that very plain. I could see the center line. If there had been red lights I could have seen them. Q. Could you see the center line of the highway? A. Yes. Q. Did you have your car equipped with a windshield wiper? A. Yes, sir. Q. Was that working? A. Yes, sir, automatic. Q. Was there anything at all to distract your attention from your driving as you drove along? A. No, we never talk, we just drive steady on. Q. Immediately after this car passed, this truck loomed up? A. Yes, sir.''

The situation here presented is very similar to the facts in the case of *Haynes* v. *Doxie*, 52 Cal. App. 133 [198 Pac. 39], where the plaintiff, driving his car at a moderate rate of speed over a paved highway in a downpour of rain, collided with a truck standing near the center of the highway without a rear light: Plaintiff did not see the truck until within 25 or 30 feet of it. There the truck company contended for the rule that it was negligence for the driver of an automobile to drive on a highway on a dark night at such a rate of speed he could not avoid objects after they came within the area illuminated by his lights. In that case the court, in declining to say that plaintiff, as a matter of law, was guilty of contributory negligence, said:

''The fact that respondent was not able to see and did not see, the unlighted truck until he was within 25 or 30 feet of the same does not fully establish the facts necessary to give appellant the benefit of the rule above stated. Notwithstanding the facts stated, it may also be true that if the truck had been lighted, as required by law, plaintiff would have been able to see it, and would have seen it, while at a distance great enough to have enabled him to stop his automobile and avoid the collision. The condition of the road, as to its openness and the distance to any point of intersection or any railroad crossing was known to both parties, and the plaintiff was entitled to proceed at a rate reasonable under those circumstances.'' (See, also, *Burgesser* v. *Bullocks*, 190 Cal. 679 [214 Pac. 649].)

In the case of *Sawdey* v. *Producers Milk Co.*, 107 Cal. App. 467 [290 Pac. 684], it was urged that plaintiff was negligent because he did not travel at such a rate of speed

that he could stop within the radius illuminated by his lights. In that case the court distinctly refused to follow the rule which had been adopted in several of the eastern states.

In the case of *Schurman* v. *Los Angeles Creamery Co.*, 81 Cal. App. 758 [254 Pac. 681], the plaintiff collided with an unlighted wagon which was approaching him from an opposite direction, a portion of which was encroaching on the portion of the highway where he was traveling. In refusing to hold that plaintiff was guilty of contributory negligence, the court there said: "Appellant asks the court to determine, as a matter of law, that a person traveling in the highway at night must see every object on his half of the highway, in face of the fact that automobile engineers and manufacturers are expending vast sums of money in extensive research to develop lights that will measure up to appellant's requirements, and have so far been partly successful. In order that this court could determine as a matter of law, that respondent was guilty of contributory negligence much more is required than would be sufficient in the trial court to sustain a finding of fact to the same effect. It must be clearly shown from the undisputed facts, judged from the light of common knowledge and experience, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure. The evidence against plaintiff should be so clear as to leave no room for doubt, and the facts such that the inference is irresistible, to justify this Court in determining, as a matter of law, plaintiff guilty of contributory negligence against such a finding."

In the case of *Gammon* v. *Wales*, 115 Cal. App. 133 [300 Pac. 988], this court made the following statement, which is applicable to the present case: "There is a very wide difference between the inferences drawn and the conclusions reached, by the appellant from the testimony in this case, and those contended for by defendants, which emphasizes the fact that reasonable minds might reach different conclusions from the same testimony, and, therefore, in such cases it is a question of fact for the jury to determine."

The case of *Casey et al.* v. *Gritsch et al.*, *ante*, p. 206 [36 Pac. (2d) 696], decided by this court on October

1, 1934, is similar in many respects to the instant case. There, upon a dark and stormy night the gasoline supply of a tank belonging to defendant, became exhausted and the truck stopped upon the highway. While so parked the car in which John Casey was a passenger ran into the rear of the truck, causing his death. Some witnesses testified the rear lights could be seen 1200 feet from the truck; others testified as positively, the rear lights upon the rear of the truck were covered with dirt and mud and the lights were very dim.

The jury found in favor of plaintiffs, and the appellants contended on appeal that the deceased was guilty of negligence as a matter of law, and claimed it was the duty of plaintiffs to establish by testimony that it was practicable to stop the truck and leave it standing completely off the paved portion of the highway as required by section 136 of the California Vehicle Act. It was held, however, that such is not a correct statement of the law, the court saying: ''The section of the California Vehicle Act makes it unlawful to leave a vehicle standing upon the paved or the main used portion of a public highway, and then specifies certain exceptions which, if proven, relieves the person who leaves such vehicle so standing upon the highway, free from responsibility. The correct rule we think is stated by the Supreme Court of Oregon, in the case of *Watt* v. *Associated Oil Co.*, 123 Or. 50 [260 Pac. 1012], to wit: 'One who parks his automobile upon the public traveled part of a highway is *prima facie* a violator of the law, and it is incumbent upon him to show affirmatively that it was necessary for him to so park it at that time and place. It is not the duty of a party injured in a collision under such circumstances, to show that such parking was not necessary, but for the other party to bring himself within the exception provided by the statute.' ''

We believe enough has been said to make clear the gist of the testimony before the trial court, from which the jury have, by their verdict, found that defendants were negligent and that the acts and conduct of plaintiff did not contribute to the injuries sustained. Purely a question of fact was present which the jury resolved in favor of plaintiff. We find nothing to warrant a different conclusion.

The judgment is therefore affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1934.