[Civ. No. 12859.   Second Dist., Div. Two.   Mar. 6, 1942.]

SAM GOODMAN, Respondent, v. L. J. MEYERS, Appellant.

Mark L. Herron, Samuel H. Robinson and Marvin Wellins for Appellant.

Orloff & Katz for Respondent.

WOOD (W. J.), J.—In this action plaintiff sought to recover a judgment for money due from defendant as the purchaser of various contracts for the conditional sales of automobiles. The court found in plaintiff's favor on three causes of action, an open book account, assumpsit for goods sold and delivered and for an accounting. Defendant filed a cross-complaint seeking the recovery of money alleged to be owing from plaintiff to defendant. The trial court found that defendant was indebted to plaintiff in the amount of $31,149.55 and that plaintiff was indebted to defendant in the sum of $15,603.72. Judgment was accordingly entered in plaintiff's favor for the sum of $15,545.83, from which judgment defendant has appealed.

Conceding that, in general, the findings of fact are supported by the "uncorroborated" testimony of plaintiff, defendant directs our attention to certain contradictions and inconsistencies in the testimony and seeks to have this court declare that plaintiff's testimony is so inherently improbable that it is insufficient to sustain the findings.

From plaintiff's testimony it appears that for many years prior to the commencement of this action plaintiff had been engaged in the used car business and defendant had been in the automobile financing business. Since 1930 defendant has purchased from plaintiff, at a discount, many conditional sales contracts on automobiles sold by plaintiff. At the commencement of their business relationship it was agreed that defendant would purchase contracts from plaintiff at a discount and would pay the purchase price in cash; however, in those instances where the contract price exceeded the value of the car, defendant agreed to pay cash to plaintiff in an amount equal to the value of the car and to issue plaintiff a due bill for the excess which was to become payable only when the conditional vendee had paid the contract price in full. It was further agreed that when the contract price exceeded the value of the car plaintiff would transfer title to the contract by an assignment in writing in the nature of a written guarantee. In all other cases, title to the contracts was to be transferred merely by delivery. Most of the conditional sales contracts purchased by defendant were transferred merely by delivery but a few were transferrd by written assignment. Despite the agreement to pay cash for the contracts it was defendant's custom upon delivery of a contract to pay the major portion of the purchase price in cash and within two or three days thereafter to deliver to plaintiff a memorandum of the transaction (referred to by the parties and hereinafter as a due bill) which usually indicated that an additional sum was due plaintiff. The due bills contained entries showing the balance of the contract price, the amount of cash which defendant had paid plaintiff and the amount of his discount. Where the cash amount paid plaintiff plus defendant's discount was less than the balance of the contract price, the difference was reflected on the due bill as an amount owing to plaintiff. Some of the due bills were issued in connection with the resale by plaintiff of automobiles which had been repossessed by defendant, or by plaintiff on defendant's be-

half. Plaintiff's bookkeeper kept a record of all due bills received. Numerous demands were made on defendant for payment of the due bills and each time defendant did not deny that the bills were then due and payable, but stated that he would have to look at his records to see how much was due plaintiff. Upon defendant's failure to pay, plaintiff commenced the present action to recover the total amount of all unpaid due bills. At the trial a number of the due bills were introduced in evidence as plaintiff's "Exhibit 1." "Exhibit 2" was a list, compiled from plaintiff's business records, of the amounts of all due bills, totaling $31,411.75, including the total of the due bills in "Exhibit 1." "Exhibit 3" consisted of contracts which had been transferred by written assignment. Plaintiff failed to prove that any of the due bills issued in connection with the contracts in "Exhibit 3" were payable and was therefore not permitted to recover upon them.

The trial court's findings to the effect that defendant became indebted to plaintiff upon an open and current account and on account of goods and choses in action sold and delivered to defendant at his request are attacked as being unsupported by the evidence. It is argued that there is no substantial evidence to prove that the due bills upon which recovery was allowed were unconditionally due and payable. Defendant concedes that plaintiff's testimony supports such findings but contends that the testimony is uncorroborated and inconsistent with other testimony of plaintiff in his deposition. Any inconsistency between testimony of a witness at the time of trial and his prior statements in a deposition presents a question of fact for determination of the trial court with which an appellate court will not ordinarily interfere. (*Miller* v. *Schimming*, 129 Cal. App. 171 [18 Pac. (2d) 357] ; *Smarda* v. *Fruit Growers' Supply Co.*, 1 Cal. App. (2d) 265 [36 Pac. (2d) 701].) Although the testimony was conflicting, there is substantial evidence to sustain the questioned findings. Both parties gave testimony to the effect that defendant agreed to pay cash for the contracts which were transferred by delivery only. Plaintiff testified that the due bills which defendant gave him for contracts which were transferred by delivery and not by written assignment were to be paid at once. There was no necessity for corroboration of plaintiff's testimony. Whether the parties by their conduct modified their original agreement with respect to uncondi-

tional cash payments was a question of fact for the determination of the trial court under all of the circumstances. The credibility of any witness is a question for the trial court to determine and it is only where his testimony is so improbable as to be impossible of belief that an appellate court will interfere with findings of fact based upon such testimony. We cannot say that plaintiff's testimony was inherently improbable.

It is contended that the evidence is insufficient to prove which of the due bills sued on were issued in connection with contracts transferred by delivery only (and therefore immediately payable) and those which were issued in connection with the transfer of contracts by written assignment, but the record contains sufficient evidence to establish this distinction. Both parties testified that with very few exceptions all contracts were transferred by delivery only. A number of contracts which contained written assignments from plaintiff to defendant were introduced in evidence as plaintiff's "Exhibit 3." These contracts were identified by plaintiff as the contracts which he had transferred by assignment in writing.

Defendant also contends that many of the due bills were shown by the evidence to have been cancelled by the issuance of later due bills in connection with the resale of an automobile which had been repossessed. The entire argument is based upon defendant's testimony to the effect that in a series of repossessions and resales of the same car, each succeeding due bill issued to plaintiff cancelled the preceding one. This testimony falls far short of proving an agreement to cancel any due bills and, at most, merely created a conflict in the evidence for the determination of the trial court. Plaintiff testified that the due bills listed in plaintiff's "Exhibit 2," which included due bills which defendant claims were cancelled, were immediately due and payable. None of the due bills issued in connection with the resale of an automobile following repossession in any way indicated that they were intended to cancel any preceding due bill, all of which were permitted to remain in plaintiff's possession. Defendant directs our attention to four series of repossession and resale transactions and endeavors to demonstrate that if all of the due bills issued in each series of sales were paid defendant would be required to pay out more money than he received from the conditional vendees. On the contrary, the

evidence shows that with few exceptions, each conditional vendee in a series of resale transactions paid a large proportion of the balance due upon his contract before defaulting. In many instances defendant actually received much more than a given car was worth and much more than the balance due upon the original contract of sale as a result of successive sales following repossessions. With reference to two of the series of resales, defendant gave testimony inconsistent with his present contention, stating that he considered both the original and subsequent due bills to be owing to plaintiff. In three of the four transactions of which defendant complains the last due bill issued to plaintiff shows that nothing was due, although the preceding due bills had been for amounts as high as $85. Since the evidence shows that plaintiff spent considerable time and money in reconditioning cars which had been delivered to him for resale, it would be unreasonable to assume that he would accept a due bill showing no balance due in cancellation of a due bill for a substantial amount. This court is powerless to interfere with the trial court's findings upon such conflicting evidence.

Upon the assumption that his contentions above considered would be upheld, defendant has devoted a large portion of his briefs to mathematical computations in an attempt to show that the judgment must be reduced. However, since we have been unable to sustain defendant's contentions, it is only necessary to state that there is substantial evidence to support the judgment in the amount found by the trial court to be due plaintiff.

The judgment is affirmed.

Moore, P. J., concurred.

Mr. Justice McComb took no part in the consideration or decision of the foregoing case.

A petition for a rehearing was denied March 30, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1942.